UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BILL LEROY SPIKE,

Plaintiff,

v.

ROBERT FENEIS, FRANK SPENCER, BILL BARHORST, KEN THOLE, KENT LARSON, TOM O'CONNELL, BRIAN OLILLA, and KATHY DARSIE,

Defendants.

CIVIL NO. 01-222 (JMR/AJB)

REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Minnesota Correctional Facility in Moose Lake, Minnesota, ("MCF-ML"), has filed a complaint alleging that Defendants have violated his federal constitutional rights.[1] The matter is presently before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a claim on which relief can be granted as to Defendants Bill Barhorst, Ken Thole, Kent Larson, Tom O'Connell, Brian Olilla and Kathy Darsie. It will therefore be recommended that this action be summarily dismissed as to those Defendants pursuant to § 1915A(b).

## I. BACKGROUND

Plaintiff's lawsuit is based on a series of incidents that occurred last year,

[1] Plaintiff did not tender the required filing fee with his complaint, but instead applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 3.) Plaintiff's IFP application will be granted by separate order.

FILED FEB 16 2001
CLERK
DEPUTY CLERK

while he was incarcerated at the Minnesota Correctional Facility in Lino Lakes, Minnesota, ("MCF-LL"). The eight named Defendants are MCF-LL prison officials who allegedly were involved in the various incidents giving rise to Plaintiff's claims.

Plaintiff initially alleges that on August 31, 2000, he needed to go to the bathroom while he was in a common area at MCF-LL. He asked Defendant Tom O'Connell for permission to use the restroom, but O'Connell denied his request. As a result, Plaintiff allegedly was "forced to hold his urine until his kidneys hurt him tremendously and he started to urinate in his pants." (Complaint, [Docket No. 2], p. (2), ¶ 10.) Defendant Kent Larson allegedly saw Plaintiff's plight and "stood there laughing at the situation." (Id.)

Later that same day, Plaintiff asked Defendant Brian Olilla for permission to go to the prison cafeteria to obtain a form. After Olilla denied Plaintiff's request, he made the same request to Olilla's superior, Defendant Larson. Both Olilla and Larson were upset with Plaintiff for questioning Olilla's decision, rejecting Plaintiff's explanation that he was merely "follow[ing] the chain of command," as recommended by prison regulations. (Id., ¶ 11.) Plaintiff later complained to Defendant Bill Barhorst about the two incidents that occurred on August 31, 2000, but Barhorst apparently offered no assistance. (Id., ¶ 12.)

During the morning of October 27, 2000, Plaintiff again approached Defendant O'Connell and told him that he needed to "urinate badly." O'Connell refused to give Plaintiff permission to go to the restroom, but Plaintiff went there anyway. As a result, O'Connell charged Plaintiff with violating prison rules. (Id., ¶ 13.) Later that day, Plaintiff discussed his various grievances with Defendant Frank Spencer, the "Corrections Program Director and Supervisor over the Plaintiff's Living Unit." Plaintiff told Spencer that

he was planning to file a civil rights lawsuit based on his grievances, and that he (Spencer) would be named as a defendant. (Id., ¶ 14.)

During the afternoon of October 27, 2000, Plaintiff met with Defendant Ken Thole and talked to him about "the restroom issue." Plaintiff and Thole apparently argued about the matter, and Thole later advised Plaintiff that he was being placed on "loss-of-privileges" status for five days. (Id.) That same afternoon, Defendant Larson informed Plaintiff that he was being fired from his prison laundry job. Plaintiff was subsequently informed that he had been fired because he had left his job to go to the prison law library. While Plaintiff acknowledges that he left his job and went to the library one day, he claims that he had received permission to do so. Plaintiff further claims that Defendant Spencer fired him solely because Plaintiff threatened to sue Spencer. (Id., ¶ 15.)

Still later on October 27, 2000, Defendant Thole informed Plaintiff that he was being place on "room restriction" between 8:00 a.m. and 4:00 p.m. for the next seven days. Plaintiff was already restricted to his room from 6:00 p.m. until 6:00 a.m., due to his loss-of-privileges status, so the additional room restriction punishment left him with very little time when he could be out of his cell during the loss-of-privileges period. (Id., ¶ 16.)

Over the course of the next few days, Plaintiff had several more meetings with various prison officials, during which the officials formalized and reaffirmed the disciplinary sanctions imposed on Plaintiff. (Id., ¶s 16-21.) Finally, on November 6, 2000, Plaintiff was told, "pack up[;] you're being transferred." The next day he was sent to MCF-ML. (Id., ¶s 22 and 23.) Plaintiff claims that the Warden at MCF-LL, Defendant Robert Feneis, caused him to be transferred solely because he tried to "exercis[e] his

Constitutional rights." (Id. ¶ 28.)

In his present lawsuit, Plaintiff asks the Court to enter a declaratory judgment holding that Defendants violated his constitutional rights under the Eighth Amendment's "cruel and unusual punishment" clause and the Fourteenth Amendment's "due process" clause. Plaintiff is also seeking awards of compensatory and punitive damages from the various Defendants.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1). Here, the action must be dismissed as to Defendants Barhorst, Thole, Larson, O'Connell, Olilla, and Darsie, because Plaintiff's complaint fails to state an actionable claim against any of them.

### A. Eighth Amendment Claim

To state an actionable civil rights claim based on the Eighth Amendment, a prisoner must allege facts showing that prison officials were personally aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately

disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). The prisoner's complaint must allege facts showing that the named defendant(s) harmed him by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), using excessive physical force, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)). No facts showing any such mistreatment are alleged in Plaintiff's present complaint.

If the complaint accurately portrays how Defendants O'Connell and Larson treated Plaintiff, it certainly appears that they acted unsympathetically and unprofessionally toward him. It is hard to imagine why Defendant O'Connell would refuse Plaintiff's requests to go to the toilet, and it is equally hard to imagine why Defendant Larson would laugh at Plaintiff's predicament. However, even if the facts alleged in Plaintiff's complaint are entirely accurate, O'Connell's and Larson's treatment of Plaintiff does not rise to the level of "cruel and unusual punishment," as that term has been interpreted by the Supreme Court.

An Eighth Amendment claimant must allege facts showing that the defendant(s) caused the plaintiff to suffer some actual, identifiable harm. "While a serious injury is not necessary, some actual injury is required in order to state an Eighth Amendment violation." White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994) (emphasis added).

In this case, there are no allegations suggesting that Plaintiff suffered any actual physical injury. Although Plaintiff undoubtedly was uncomfortable during the time when he was prevented from going to the bathroom, there are no allegations suggesting that he suffered any objectively identifiable injury. There is no indication that Plaintiff sought any medical attention, or that he experienced any harm more serious than the well-known discomfort of a very full bladder. While the Court does not mean to trivialize Plaintiff's discomfort, (nor does the Court mean to condone Defendants' alleged behavior), it is clear that Plaintiff did not suffer the type of "actual injury" that could provide the basis for an Eighth Amendment cause of action.[2] Thus, the Court concludes that the facts alleged in Plaintiff's complaint -- even if entirely true -- will not support an Eighth Amendment claim against O'Connell or Larson, (or any other Defendant).[3]

B. Due Process Claims

To maintain an actionable Fourteenth Amendment due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a]

---

[2] Moreover, because there are no factual allegations showing physical harm in this case, it appears that Plaintiff's Eighth Amendment claim is barred by 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

[3] The Court also notes that Plaintiff seems to be trying to assert a common law negligence claim against Defendants O'Connell and Larson. Because Plaintiff has failed to state an actionable federal claim against those two Defendants, his supplemental state law claim against them should not be entertained here. See Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981) ("when federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims").

due process claim is cognizable only if there is a recognized liberty or property interest at stake"). The only possible interests at issue in this case appear to be (1) Plaintiff's interest in being able to leave his cell, (i.e., not being subject to "loss-of-privileges" and "room restriction"), and (2) Plaintiff's interest in keeping his prison job.[4] While those two matters are undoubtedly important to Plaintiff, they do not qualify as "liberty interests" that warrant the protections of due process.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). There, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), our Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

---

[4] Plaintiff may also believe that he has a protected liberty interest in staying at a particular prison location, but that clearly is not so. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting Meachum v. Fano, 427 U.S. 215, 228 (1976). Furthermore, the Court is not presently recommending that this action be dismissed against the individual who allegedly caused Plaintiff's prison transfer – namely Warden Feneis. Therefore, Plaintiff's prison transfer will not be considered in the present discussion of his due process claim.

Here, Plaintiff has not pleaded an actionable due process claim because he has presented no factual allegations suggesting that he has been subjected to the type of severe hardship that Sandin requires. The only possible "hardships" that can be found in Plaintiff's complaint are (1) his loss-of-privileges and room restriction punishments, and (2) the loss of his prison job. Neither of these "hardships," however, constitutes the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin.

**(i) Loss-of-Privileges and Room Restriction**

Sandin itself shows that a brief period of highly restricted confinement -- such as the confinement resulting from Plaintiff's loss of privileges and room restriction status -- does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected liberty interest. In the present case, Plaintiff apparently was restricted to his cell for no more than twelve days, October 27, 2000, to November 7, 2000. His restricted status was far shorter, and probably less onerous, than the thirty-day term of segregated confinement at issue in Sandin.[5] Case law from other jurisdictions suggests that segregated confinement for as long as a full year will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of

---

[5] In two unpublished decisions, the Eighth Circuit has found that periods of segregated confinement much longer than thirty days do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).

hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

Based on Sandin and the relevant case law following it, the Court concludes that Plaintiff's loss-of-privileges and room restriction status, lasting for twelve days or less, does not constitute the type of hardship that would implicate a protected liberty interest. It follows that Plaintiff was not entitled to the procedural protections of due process before being subjected to the restrictions described in his complaint.

**(ii) Prison job**

Plaintiff's loss of his prison job also is not a serious enough hardship to support an actionable due process claim. Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). Thus, under the Sandin test, Plaintiff had no constitutionally protected liberty interest in retaining his prison job. It follows that he was not entitled to the procedural protections of due process before being removed from his job.

In sum, the Court finds that neither Plaintiff's brief term of restricted confinement, nor the loss of his prison job, constitutes the type of "atypical and significant hardship" referred to in Sandin. Plaintiff therefore did not have a protected liberty interest in being free from restricted confinement or in retaining his prison job. Because no liberty interest was at stake, the Court finds that Plaintiff was not entitled to due process, and thus his complaint fails to state an actionable due process claim.

## III. CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Eighth Amendment claim and his Fourteenth Amendment Due Process claims be dismissed. Because no other claims have been pleaded against Defendants O'Connell, Larson, Barhorst, Thole, Larson, O'Connell, Olilla, and Darsie it is recommended that the action be dismissed as to these six Defendants.[6]

## IV. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's claims against Defendants Bill Barhorst, Ken Thole, Kent Larson, Tom O'Connell, Brian Olilla and Kathy Darsie be dismissed pursuant to 28 U.S.C. § 1915A(b); and

---

[6] Plaintiff's retaliation claims against Defendants Feneis and Spencer will not be addressed at this time. Plaintiff will be allowed to pursue such claims, at least for now.

2. Plaintiff's claims against the two remaining Defendants, Robert Feneis and Frank Spencer, be allowed to go forward at this time.

Dated: February 15th, 2001

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.