**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Bill Leroy Spike, Civil No. 01-222 (JMR/AJB)

Plaintiff,

v. **REPORT AND RECOMMENDATION**

Robert Feneis and Frank Spencer,

Defendants.

This matter is before the United States Magistrate Judge for Report and Recommendation on defendants' motion for summary judgment [Docket No. 24] dismissing the complaint. Plaintiff filed a pro se complaint for violation of civil rights under 42 U.S.C. § 1983. The complaint alleges retaliation relating to the prisoner's notice to defendant Spencer that he would be commencing a lawsuit, and further alleges a retaliatory transfer claim against defendant Feneis. Other claims and defendants were dismissed on initial screening pursuant to 28 U.S.C. § 1915A(b).[1] With respect to surviving claims, plaintiff's complaint demands declaratory judgment, compensatory damages, and punitive damages.

---

[1] Plaintiff's complaint also alleged claims of cruel and unusual punishment in violation of the Eighth Amendment and due process claims against several other defendants. Claims against prison employees Bill Barhorst, Ken Thole, Kent Larson, Tom O'Connell, Brian Olilla, and Kathy Darsie, were summarily dismissed pursuant to the Magistrate Judge's Report and Recommendation dated February 16, 2001 [Docket No.5], and District Court Order dated May 18, 2001. [Docket No. 13]. In the Report and Recommendation the Magistrate also made the express determination that plaintiff had no constitutionally protected liberty interest in retaining his prison job and therefore the complaint did not state an actionable due process claim based upon the actual job termination. Plaintiff filed no objections to the Report and Recommendation. Though the District Court's Order stated that plaintiff was permitted to proceed on claims against Robert Feneis and Frank Spencer, the only remaining claims at issue are the prison transfer retaliation claim against Feneis and a retaliation claim against Spencer based upon the prisoner's oral notice of intent to sue over disciplinary actions that had been taken against him.

FEB 2 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendants move for summary judgment dismissing all claims with prejudice. Defendants assert Eleventh Amendment immunity from liability for damages on claims against them in their official capacities and further contend that claims against them in their individual capacities should be dismissed because the claims have no merit and plaintiff cannot prevail on those allegations as a matter of law. Defendants also allege qualified immunity from claims against them in their individual capacities.

**Background and Claims**

The complaint in this action arose out of events that took place while plaintiff Bill Leroy Spike was a prisoner at the Minnesota Correctional Facility at Lino Lakes.[2] Defendant Robert Feneis is the warden at the Lino Lakes facility. Defendant Frank Spencer is the program director at the prison and has authority with respect to prisoner job assignments and termination decisions. The complaint[3] alleges that Spencer fired plaintiff from his job in the prison laundry for the sole reason that the prisoner had told Spencer that he would be filing a Section 1983 civil suit, therein naming Spencer as a defendant.[4]

---

[2] Plaintiff is not presently incarcerated. He has been released into the community on intensive supervised release and states that he is currently employed through Steamfitters Local #455 at the Koch Oil Refining Corporation in Rosemount, MN.

[3] Plaintiff filed a form Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983 [Docket No. 1] and also filed a separate Complaint accompanied by exhibits. [Docket No. 2]. The form complaint identifies each of the defendants and their positions. The fact allegations and claims are alleged in the second complaint. In this report the Court construes both documents together as being the complaint in this matter.

[4] Complaint, para. 15. [Docket No. 2]. This claim is alleged in the complaint as an action based upon denial of due process. The Court has previously dismissed plaintiff's due process claims relating to the job termination, but interprets this surviving claim as an allegation of retaliation by defendant Spencer against the prisoner because the prisoner threatened to exercise a constitutional right to commence a civil rights action under 42 U.S.C. § 1983.

Prior to action being taken by defendant Spencer involving this matter, plaintiff had been at his prison laundry job on October 26, 2000, and at 5:30 p.m. had signed out to go to the law library. He returned approximately 10 minutes later. The supervising corrections officer reported the return time as 6:00 p.m. on a sign in/out sheet.[5] Before leaving for the law library the prisoner was advised that the minimum sign out time was 30 minutes and that his pay would reflect that he had been gone for one half hour, regardless of whether he returned to work in less time. Plaintiff insisted that he was entitled to break time and should be permitted to sign out for less than 30 minutes. When the sign in/out sheet was later reviewed by a corrections officer, it was noted that the 6:00 p.m. return time had been written over with the time 5:35. Plaintiff acknowledged that he had made the change.[6] The following day, October 27, 2000, the prisoner met with defendant Spencer to discuss an incident which had occurred that morning in which the inmate had been disciplined for leaving his room to use the bathroom without permission. At that time the prisoner advised Spencer that he would be filing a Section 1983 civil suit, including Spencer himself as a defendant.[7] Later that afternoon Spencer was advised of the incident involving the sign in/out time change. He thereafter determined that the prisoner should be terminated from his job based upon his misrepresentation of the amount of time for which he should be paid,[8] and the prisoner was served a termination notice that same day.

---

[5] Affidavit of Kathy Darsie. [Docket No. 31].

[6] Id.

[7] Complaint, para. 13. [Docket No. 2]. See also: attached Offender Kite Form, dated October 29, 2000.

[8] Affidavit of Frank Spencer. [Docket No. 28].

On November 6, 2000, the prisoner was notified that he was being transferred from MCF–Lino Lakes to MCF–Moose Lake, and he was moved the following day. Plaintiff's claim against defendant Robert Feneis alleges that he was transferred as a consequence of asserting his rights to due process with respect to disciplinary issues[9] which had arisen over the previous few days, including the job termination matter. Defendant denies that the transfer was motivated by retaliation and states that the transfer was based upon housing needs for inmates who are required to participate in chemical dependency programming at MCF–Lino Lakes. Plaintiff himself had been placed at the Lino Lakes facility to allow him to participate in the TRIAD chemical dependency program and thereby meet a programming requirement for his timely release. Mr. Spike entered the TRIAD program on October 19, 1999, and he completed the program on May 18, 2000.[10] The TRIAD program has limited capacity and in order to accommodate the programming requirements of other inmates in the Minnesota corrections system, prisoners are frequently transferred to other institutions after completing the program.[11]

**Summary Judgment**

Defendants move for summary judgment dismissing the complaint in this matter in its entirety. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct 2548,

---

[9] Affidavit of Marty McHugh. [Docket No. 27].

[10] Affidavit of Art Gullette. [Docket No. 30].

[11] Id.

2552 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n.11, 106 S.Ct. at 1356; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995); Fed. R. Civ. P. 56(e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

**Eleventh Amendment Immunity**

The Eleventh Amendment protects the State and arms of the State from liability for damages in a Section 1983 action. This same immunity extends to state officials who are named as defendants in a Section 1983 action where the suit is brought against an individual acting in an official capacity. In such a case the action is not against the person but is against the office and is no different from a suit against the State itself. See Hafer v. Melo, 502 U.S. 21, 25-26, 112 S.Ct. 358, 361-62 (1991); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).

Plaintiff names Robert Feneis, warden at MCF–Lino Lakes, and Frank Spencer, Lino Lakes prison program director, as defendants in this action. The complaint states that each defendant is sued "in Color of State Law and in his Individual Capacity."[12] Neither the complaint nor plaintiff's supporting arguments allege specific actions by a defendant which are outside the scope of his official duties as an employee of the corrections system, an arm of the State. The only reference to defendant Feneis with respect to claims presently before the Court is the allegation that Feneis "violated plaintiff's rights by signing transfer papers to transfer the Plaintiff to another institution for the sole reason of Plaintiff exercising his Constitutional rights."[13] With respect to defendant Feneis' authority to execute transfer papers he is clearly being sued in his official capacity and as an agent of the public entity is entitled to Eleventh Amendment immunity from liability for monetary damages. Roberts v. Dillon, 15 F.3d. 113, 115 (8th Cir. 1994). Likewise, the claim that defendant Spencer terminated plaintiff from his prison job in retaliation for a threat to bring a Section 1983 action is an official capacity suit under circumstances whereby the defendant, as program director, is authorized to terminate prisoner jobs and was acting within the scope of his employment in taking such action against plaintiff. Claims against defendant Spencer are barred by the Eleventh Amendment to the extent plaintiff seeks monetary damages for actions taken in an official capacity.

Plaintiff has asserted that he is also suing defendants Feneis and Spencer in their individual capacities. The prisoner points to no evidence in the record and makes no factual allegations or legal argument in support of the notion that Feneis should be held liable in an

---

[12] Complaint, para. 7 and 8. [Docket No. 2].

[13] Id., para. 28.

individual capacity, i.e. in a capacity other than as an employee of the State and thereby entitled to Eleventh Amendment immunity. However, the complaint does assert defendant Feneis' personal involvement in the process whereby the prisoner was transferred and it therefore cannot be said that the suit is decidedly against the office rather than the person. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. at 2312. Defendant Feneis is therefore not entitled to Eleventh Amendment immunity against suit in his individual capacity. Plaintiff has also presented evidence of defendant Spencer's personal involvement in matters which give rise to a retaliation claim and the program director therefore is also not entitled to Eleventh Amendment immunity in regard to his liability in an individual capacity.

**Retaliation Claims**

Plaintiff in this matter insists that he was terminated from his job in the prison laundry in retaliation for informing defendant Spencer that he intended to commence a civil rights action and that he was transferred from MCF–Lino Lakes to MCF–Moose Lake in retaliation for exercising his constitutional rights. Plaintiff correctly contends that a prisoner may not be punished for exercising his constitutional right of access to the courts. Sisneros v. Nix, 95 F.3d 749, 751 (8th Cir. 1996)(citing Goff v. Burton, 7 F.3rd 734, 736-37 (8th Cir. 1994)). The prohibition against punishing a prisoner for legal activities encompasses a prohibition against retaliation for an inmate's legal activities, Goff v. Burton, 91 F.3rd 1188, 1191 (8th Cir. 1996), as well as retaliatory transfer. Id. This rule against retaliatory transfer applies even though the prisoner has no particular right to remain at a particular institution. Id.

Though retaliation for its own sake is prohibited, in the context of prisoner discipline, the claim must be treated with skepticism because "[e]very act of discipline . . . is by

definition 'retaliatory' in the sense that is responds directly to prisoner misconduct." Sisneros v. Nix, 95 F.3d at 752 (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996)(en banc)). With regard to retaliatory transfer the burden is on the prisoner to prove that the transfer would not have taken place but for an unconstitutional, retaliatory motive. Sisneros at 752, citing Goff, 7 F.3d at 738. When considering whether inmate litigation has caused the transfer, the court must examine whether the transfer was motivated by the litigation or by the nature of the dispute underlying the litigation. Sisneros at 752. The standard with respect to a decision to otherwise discipline an inmate for legal activities is different and requires only that defendants show the existence of "some evidence" to support the decision to discipline for actual violation of prison rules. Goff v. Burton, 91 F.3d and 1191.

Plaintiff's retaliation claim against defendant Spencer rests upon the allegation that the prisoner was terminated from his laundry job because he stated an intention to exercise his legal right to sue. Defendant offers undisputed evidence that the plaintiff altered a workers sign in/out sheet to change the time at which he returned from a visit to the law library[14] and that the difference would affect the amount of time for which the prisoner should be paid.[15] Defendant Spencer asserts that the inmate was terminated because he altered the time sheet and thereby misrepresented the amount of time for which he should be paid for his job assignment.[16] Plaintiff has nowhere denied that he made the time change and continues to assert that he was

---

[14] Affidavit of Kathy Darcie. [Docket No. 31].

[15] Affidavit of Frank Spencer. [Docket No. 28].

[16] Id.

entitled to make the "correction."[17] Whether the prisoner should have been permitted to use break time to visit the law library, whether it was proper to deny him pay for a full one-half hour time increment, and whether the prisoner was entitled to hearing on the job termination dispute are not material issues with respect to the retaliation claim. Critical and undisputed evidence shows that the plaintiff defied the instructions of a corrections officers and altered a time sheet for the purpose of misrepresenting the amount of time for which he would be paid. There is clearly "some evidence" to support the decision to discipline the prisoner for actual violation of institution rules and plaintiff therefore cannot prevail on a claim that his job termination was in retaliation for expressing an intent to sue defendant Spencer under Section 1983. Furthermore, there is no evidence and no apparent claim that Spencer had any personal involvement in the decision to transfer plaintiff to MCF–Moose Lake. Plaintiff's retaliation claims against defendant Spencer should be dismissed on the merits.

Plaintiff's retaliatory transfer claim against warden Feneis is likewise without substance. The complaint simply makes the bare assertion that Feneis executed the transfer papers for the sole reason that the plaintiff was exercising his constitutional rights. Though the claim is made in connection with an allegation that corrections staff were prosecuting him and punishing him in violation of his right to due process, defendant Feneis' role in such denial of rights is not clearly asserted. In any event, the Court has previously determined that plaintiff was not denied due process, and aside from the fact of the transfer itself, there is no evidence to indicate a causal connection between the transfer and any exercise of constitution rights or other legal activity by the plaintiff. Most importantly, in light of the reason for transfer that is

---

[17] Plaintiff's Brief in Support of Memorandum Response. [Docket No. 36].

articulated by defendant, the plaintiff cannot show that the transfer would not have taken place but for an unconstitutional, retaliatory motive. That is, plaintiff cannot prove that his transfer out of MCF–Lino Lakes was not for the purpose of allowing other prisoners to attend the TRIAD chemical dependency program at Lino Lakes. Indeed, there is no concrete evidence that the transfer was for any purpose at all other than to create bed space for incoming TRIAD prisoners. With regard to retaliatory transfer the prisoner has presented no evidence and as a matter of law cannot carry the burden of showing that the sole motive for his transfer was retaliation or that he would not have been transferred but for his efforts to exercise constitutional rights. Plaintiff claim of retaliatory transfer against defendant Feneis should be dismissed.

**Qualified Immunity**

It is also argued that plaintiff's claims against defendants Feneis and Spencer are barred based upon defendants' qualified immunity from civil damages applied to individuals. This Court concludes that defendants are entitled to qualified immunity from liability for money damages. The Supreme Court has long held that a state officer sued in his or her personal capacity under 42 U.S.C. § 1983 "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages. Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)).

At the time of plaintiff's transfer to MCF–Moose Lake it was established in the law that a prisoner could not be transferred or otherwise disciplined solely in retaliation for

exercising a constitutional right. Murphy v. Missouri Dept. of Correction, 769 F.2d 502, 503 (8th Cir. 1985). However, a prohibition against purely retaliatory punishment does not preclude discipline based upon prisoner misconduct or uncooperative behavior and does not preclude transfer for legitimate non-retaliatory purposes. Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991). In the present case, plaintiff's allegation of retaliatory action cannot survive for reasons discussed above in regard to the merits of the claims. Furthermore, the defendants cannot be held individually liable for money damages because they reasonably relied upon existing law with respect to prisoner transfers and prisoner discipline for misconduct. Because the actions by defendants did not violate clearly established statutory or constitutional rights, they are entitled to qualified immunity from individual liability for monetary damages. Defendants' motion for summary judgment dismissing claims for compensatory and punitive damages against them in their individual capacities should be granted on grounds of qualified immunity. See Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987).

## CONCLUSION

Defendants in this matter are entitled to Eleventh Amendment immunity from liability for damages to the extent they were acting in an official capacity, and they are entitled to qualified immunity from claims made against them in an individual capacity. Plaintiff cannot show that he would not have been terminated from his prison laundry job and would not have been transferred but for his exercise of a constitutional right and therefore he cannot prevail on his retaliation claims. Plaintiff has not put forth facts sufficient to show the existence of genuine issues of material facts as necessary to survive summary judgment.

## RECOMMENDATION

Based upon the foregoing discussion and conclusions, the Magistrate Judge **recommends** that defendants' motion for summary judgment [Docket No. 24] be **granted**, and plaintiff's complaint be dismissed with prejudice.

Dated: February 28, 2002

Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 12, 2002.